KAEMPFER CROWELL
Sihomara L. Graves, No. 13239
Brett W. Pilling, No. 15981
50 West Liberty Street, Suite 1100
Reno, Nevada 89501
Telephone: (775) 852-3900
Facsimile: (775) 327-2011
Email: sgraves@kcnvlaw.com
Email: bpilling@kcnvlaw.com

McDERMOTT WILL & SCHULTE LLP
J. Jonathan Hawk (*pro hac vice* forthcoming)
Arianna Swazer (*pro hac vice* forthcoming)
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone: (310) 277-4110
Facsimile: (310) 277-4730
Email: jhawk@mcdermottlaw.com
Email: aswazer@mcdermottlaw.com

Attorneys for Non-Party X CORP.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY MITCHELL,<br><br>    Plaintiff,<br><br>v.<br><br>EMORY ANDREW TATE III, et al.,<br><br>    Defendants. | Case No. 2:26-cv-00720-JAD-BNW<br><br>**NON-PARTY X CORP.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA** |

KAEMPFER

CROWELL

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................1

II. RELEVANT FACTS AND PROCEDURAL BACKGROUND ...............................3

    A.  Plaintiff's Subpoena Seeks to Unmask an Anonymous Speaker .................................3

    B.  X Corp. Attempts to Meet and Confer to Resolve Issues ...........................................4

III. ARGUMENT ...........................................................................................................5

    A.  The Motion is Defective Due to Improper Service .....................................................5

    B.  Plaintiff Failed to Meaningfully Meet and Confer .....................................................6

    C.  First Amendment Standard for Unmasking an Anonymous User ...............................8

    D.  The Motion Fails to Satisfy the First Amendment Standard for Unmasking the Anonymous User .......................................................................10

IV. CONCLUSION..........................................................................................................14

KAEMPFER

CROWELL

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. Gonzales*,
  478 F. Supp. 2d 775 (E.D. Pa. 2007) ........................................................................15

*In re Anonymous Online Speakers*,
  661 F.3d 1168 (9th Cir. 2011) ............................................................................2, 15

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)......................................................................................15

*Bliss v. CoreCivic, Inc.*,
  No. 218CV01280JADEJY, 2022 WL 2498997 (D. Nev. June 2, 2022) ..................15

*Brown v. Entm't Merch. Ass'n*,
  564 U.S. 786 (2011)...................................................................................................15

*Buckley v. Am. Const. L. Found.*,
  525 U.S. 182 (1999)............................................................................................2, 15

*Computer & Commc'ns Indus. Ass'n v. Paxton*,
  747 F. Supp. 3d 1011 (W.D. Tex. 2024)...................................................................15

*Doe v. 2TheMart.com Inc.*,
  140 F.Supp.2d 1088 (W.D.Wash. 2001)...................................................................15

*In re Grand Jury Subpoena*,
  875 F.3d 1179 (9th Cir. 2017) ..................................................................................15

*Highfields Cap. Mgmt., L.P. v. Doe*,
  385 F. Supp. 2d 969 (N.D. Cal. 2005) ......................................................................15

*Jones v. Meta Platforms, Inc.*,
  No. 25-MC-80165-TSH, 2025 WL 2308494 (N.D. Cal. Aug. 11, 2025)................15

*Lamont v. Postmaster General*,
  381 U.S. 301 (1965)...................................................................................................15

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334 (1995)...................................................................................................15

*Music Grp. Macao Com. Offshore Ltd. v. Does*,
  82 F. Supp. 3d 979 (N.D. Cal. 2015) ........................................................................15

*NetChoice v. Carr*,
  2025 WL 1768621 (N.D. Ga. June 26, 2025)............................................................15

KAEMPFER

CROWELL

*Nevada Power Co. v. Monsanto Co.*,
151 F.R.D. 118 (D. Nev. 1993)........................................................................................15

*Packingham v. North Carolina*,
582 U.S. 98 (2017)......................................................................................................2, 15

*PSINet, Inc. v. Chapman*,
362 F.3d 227 (4th Cir. 2004) ...........................................................................................15

*Quixtar, Inc. v. Signature Mgmt. Team, LLC*,
No. 3:07-CV-505-ECR-RAM, 2009 WL 10690927 (D. Nev. Apr. 8, 2009) .........................15

*Reno v. ACLU*,
521 U.S. 844 (1997)....................................................................................................2, 15

*ShuffleMaster, Inc. v. Progressive Games, Inc.*,
170 F.R.D. 166 (D. Nev. 1996)........................................................................................15

*In re Subpoena to X Corp.*,
No. 260P00002-1B, slip op. (Nev. Dist. Ct. Carson City July 1, 2026) ..................................15

*Talley v. California*,
362 U.S. 60 (1960)..........................................................................................................15

*United States v. Real Prop. Located in Los Angeles*,
No. CV 20-6314-CAS (KS), 2024 WL 4467591 (C.D. Cal. Aug. 19, 2024) .........................15

*Yelp Inc. v. Super. Ct.*,
17 Cal. App. 5th 1 (2017) ................................................................................................15

**Other Authorities**

U.S. Const., amend. 1 ..............................................................................................1, 2, 3, 15

Fed. R. Civ. P. 5..........................................................................................................1, 15

## I.    INTRODUCTION

Plaintiff Anthony Mitchell, through his Motion to Compel Non-Party X Corp.'s Compliance with Court-Authorized Rule 45 Subpoena (the "Motion"), seeks an order requiring X Corp. to take the irreversible step of unmasking an anonymous online speaker. The ability to speak anonymously, including online, enjoys First Amendment protections that have been recognized by the Supreme Court of the United States, the Ninth Circuit, and federal and state courts nationwide. And, as courts have held, a person seeking to unmask an anonymous speaker can do so *only after* making a prima facie showing of their claim against the anonymous speaker *and* a showing that their need for information unmasking the speaker outweighs the speaker's need to remain anonymous.

Plaintiff's motion falls well short of making the legally required showing to overcome these constitutional protections. The Motion offers little more than speculation that the holder of the X account @issathecooker (the "X Account") engaged in actionable misconduct. That is wildly insufficient. To find otherwise would not only contravene holdings from courts within this circuit, but would also set dangerous precedent in stripping away First Amendment rights to speak anonymously based on nothing more than bare speculation.

Indeed, Plaintiff alleges that the individual associated with the account at-issue here on the X platform (the "X Account") participated—in some unspecified fashion—in a cryptocurrency-related scheme. Plaintiff seeks information that could identify the account holder so that Plaintiff can name that individual as a defendant in this litigation and serve him or her with the complaint. To that end, Plaintiff served a Rule 45 subpoena on X Corp. seeking the registered name, email address, and telephone number associated with the X Account. Although the subpoena seeks only basic subscriber information, disclosure of that information could nevertheless reveal the identity of an anonymous speaker and permanently extinguish that individual's anonymity. That bell cannot be unrung once subscriber data is produced, and First Amendment case law demands far more regard be given to the right to speak anonymously than Plaintiff gives it.

The Motion suffers from multiple, independent defects that compel denial. *First*, Plaintiff did not properly serve the Motion. Federal Rule of Civil Procedure 5(b)(2)(E) permits service by electronic means only where the recipient has consented in writing. X Corp. never provided such consent.

KAEMPFER

CROWELL

Nevertheless, Plaintiff served the Motion solely by email. The Motion is therefore procedurally defective and should be denied on that basis.

*Second*, Plaintiff failed to meaningfully meet and confer in good faith before seeking judicial intervention. Local Rules IA 1-3(f) and 26-6 require parties to engage in a genuine effort to resolve or narrow discovery disputes before filing a motion. Here, X Corp. explained the constitutional concerns implicated by Plaintiff's request and specifically asked Plaintiff to identify the factual basis tying the X Account itself to actionable conduct. Plaintiff declined to do so. Instead, Plaintiff generally asserted that he believed the account was involved in the alleged scheme in some unspecified way, refused to provide further details, and took the position that any additional explanation would merely assist X Corp. in opposing the Motion. Plaintiff proposed no compromise and made no meaningful effort to address the concerns raised by X Corp. Plaintiff essentially demanded complete capitulation. The result was not a good-faith effort to resolve the dispute, but a prelude to imminent motion practice.

*Third*, the Motion fails to satisfy the applicable First Amendment safeguards required before an anonymous speaker may be unmasked. The Supreme Court has repeatedly recognized that anonymous speech, including speech occurring online via social media platforms, is entitled to First Amendment protection. *Reno v. ACLU*, 521 U.S. 844, 868 (1997); *Buckley v. Am. Const. L. Found.*, 525 U.S. 182, 200 (1999); *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017). This does not immunize anonymous speakers from liability for their speech, but it does require that First Amendment safeguards be satisfied before the anonymous speaker can be unmasked. These safeguards are necessary to avoid a chilling effect that would see people simply not participate in the marketplace of ideas out of fear that they could be unmasked in order to be harassed for expressing unpopular opinions.

Those safeguards, as applied by courts in the Ninth Circuit as well as federal courts throughout the country, are comprised of requiring a movant seeking to unmask the anonymous speaker to: (1) make a prima facie showing of his or her claim; and (2) demonstrate that the balance of interests favors the movant's need for the evidence over the anonymous speaker's interests in remaining anonymous. *See, e.g.*, *In re Anonymous Online Speakers*, 661 F.3d 1168, 1175-76 (9th Cir. 2011) (collecting cases nationwide).

KAEMPFER
CROWELL

Plaintiff has not carried that burden. Rather than presenting evidence establishing that the holder of the X Account engaged—himself or herself—in actionable conduct, Plaintiff relies primarily on allegations contained in his sprawling Complaint, which supplies allegations against the individual the Complaint calls "ISSA" without parsing which, if any, of those were undertaken by the X Account and which were untaken by other individuals or accounts. In particular, Plaintiff points to allegations about conduct by a user on, among others, the Telegram platform, and attempts to attribute that alleged conduct to the X Account—an account on an entirely different platform by a potentially unrelated users—simply because the accounts have similar names. And in doing so, Plaintiff thus asks the Court to infer wrongdoing from conduct allegedly occurring on unrelated platforms and involving actors other than the X Account.

What remains is that the Complaint, and now the Motion, never demonstrate that the anonymous speaker actually engaged in the alleged conduct or in conduct sufficient to justify disclosure. That is particularly significant because the harm from disclosure of the account holder's identity cannot be undone. If Plaintiff is mistaken, an uninvolved individual will lose the constitutional right to anonymous speech based solely on speculation. Once anonymity is lost, it cannot be restored.

Accordingly, the Court should deny the Motion. Plaintiff's procedural failures provide independent grounds for denial, and, in any event, Plaintiff has not satisfied the First Amendment safeguards required before an anonymous speaker may be unmasked.

## II.   RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A.   Plaintiff's Subpoena Seeks to Unmask an Anonymous Speaker

Plaintiff brings this action against numerous defendants arising from an alleged cryptocurrency-related scheme. As relevant here, Plaintiff names as a defendant an individual identified as "ISSA," whom Plaintiff alleges operates the X account @issathecooker. ECF No. 34, First Amended Complaint ("FAC"), ¶ 5k. Plaintiff alleges that ISSA, via the Telegram accounts @issathecooker and @issasthoughts, participated in certain aspects of the alleged scheme, including by contacting Plaintiff's brother Bryan Mitchell regarding the token, personally minting the cryptocurrency token, and orchestrating the "pump-and-dump" scheme. *Id.*, *See also* Mot. at 9. As for allegations concerning the X Account, Plaintiff asserts only that the X Account made three posts,

KAEMPFER

CROWELL

including allegedly directing viewers of the post not to sell the token in question. Mot. at 10. There are notably, however, no other specific allegations that the X Account was used to participate in the purported scheme underlying the claims in this case.

Because Plaintiff does not know the identity of the person associated with the @issathecooker account, Plaintiff moved for leave to conduct expedited third-party discovery to identify certain unnamed defendants, including the individual allegedly associated with @issathecooker. ECF No. 36; see also FAC, ¶ 5k. On June 8, 2026, the Court granted Plaintiff leave to serve certain Rule 45 subpoenas for that purpose.

Plaintiff subsequently served a subpoena on X Corp. seeking limited subscriber information associated with the @issathecooker account, including the registered name, email address, and telephone number, in order to ascertain the identity of the individual behind the X Account. *See* Concurrently filed Declaration of Ari Swazer in support of Non-Party X Corp.'s Opposition to Plaintiff's Motion to Compel Compliance with Subpoena ("Swazer Decl.") at ¶ 2.

Notably, Plaintiff's motion seeking leave to conduct early discovery did *not* address case law setting forth the standard required for unmasking an anonymous speaker. As discussed in greater detail below, this was pointed out to Plaintiff during the meet and confer process, and Plaintiff glossed over it, stating that if the Court thought that were important, the Court would have raised it *sua sponte.* Swazer Decl. at ¶ 4.

**B.      X Corp. Attempts to Meet and Confer to Resolve Issues**

X Corp. timely objected to the subpoena on June 29, 2026. Among other things, X Corp.'s objections noted that disclosure of the requested information would unmask an anonymous speaker and therefore implicates First Amendment interests. Swazer Decl. at ¶ 2. X Corp. further stated that, before disclosure could be compelled, Plaintiff was required to make a sufficient evidentiary showing connecting the account holder to actionable conduct. *Id.* In response, Plaintiff emailed X Corp., demanding compliance, and stating that his email alone would suffice as his good faith attempt to meet and confer. *Id.* at ¶ 3. Essentially, Plaintiff's email demanded complete capitulation without making any effort to understand X Corp.'s concerns. It was X Corp. that, in efforts to resolve the issue without motion practice, encouraged a phone call, informing Plaintiff that it was available to discuss. *Id.*

KAEMPFER

CROWELL

The parties then conferred telephonically regarding X Corp.'s objections on July 7, 2026. During that discussion, X Corp. explained that its principal objection—given the agreed upon limited scope of the subpoena to basic subscriber information including name provided at registration, email address, and phone number—was the First Amendment implications of revealing the identity of an anonymous speaker. *Id.*, ¶¶ 2, 4. To that end, X Corp. sought to understand the factual basis for Plaintiff's request to unmask the user behind the X Account, and specifically asked Plaintiff to identify conduct by the X Account itself that purportedly supported the claims asserted against the anonymous account holder. *Id.*, ¶¶ 5-7. Rather than identify any actionable conduct alleged undertaken by the user behind the X Account, Plaintiff generally asserted that the account was important to the broader alleged scheme and ***repeatedly referenced alleged conduct occurring on other platforms, including Telegram***. *Id.*

X Corp. explained that allegations concerning similarly named Telegram accounts or broader allegations regarding the alleged scheme were insufficient to justify unmasking an anonymous speaker absent a showing connecting the X Account itself to actionable conduct. *Id.*, ¶¶ 7-8. X advised Plaintiff that constitutional protections applicable to anonymous speech required such a showing and asked Plaintiff to explain what conduct by the X Account justified disclosure. *Id.* X Corp. went to great lengths to explain not only First Amendment law on anonymous speakers and the safeguards that need to be satisfied before an anonymous speaker can be unmasked, but also explained the serious risks involved if those safeguards are not satisfied, including potentially unmasking an anonymous speaker who has nothing to do with the underlying dispute based on nothing more than unsupported supposition. *Id.* Plaintiff ignored those explanations; he declined to provide additional details and instead indicated that he intended to file a motion to compel. *Id.*

Plaintiff thereafter filed the present Motion seeking an order compelling X to disclose the registered name, email address, and telephone number associated with the X Account. ECF No. 98.

## III.   ARGUMENT

### A.   The Motion is Defective Due to Improper Service

Federal Rule of Civil Procedure 5(b)(2)(E) permits service by electronic means only where "the person consented to [such service] in writing." Fed. R. Civ. P. 5(b)(2)(E). The Rule requires

KAEMPFER

CROWELL

express written consent for service by email, and such consent "cannot be implied from conduct." Fed. R. Civ. P. 5 advisory committee's note to the 2001 amendment.

Here, Plaintiff did not properly serve the Motion. X Corp. did not consent—expressly or otherwise—in writing to service of motion papers by email. Plaintiff nevertheless served the Motion solely by electronic mail. Swazer Decl. ¶ 10.

Notably, Plaintiff properly served the underlying Rule 45 subpoena on X Corp.'s registered agent in accordance with the Federal Rules of Civil Procedure, demonstrating his familiarity with the applicable rules governing service. Plaintiff's failure to comply with Rule 5's express written consent requirement before utilizing email service renders the Motion procedurally defective. For this reason alone, the Motion should be denied. *See United States v. Real Prop. Located in Los Angeles*, No. CV 20-6314-CAS (KS), 2024 WL 4467591, at *4 (C.D. Cal. Aug. 19, 2024) (motion to compel compliance with subpoena to non-party denied for failure to comply with Rule 5 where motion was served via email service without consent).

This alone is a sufficient basis for denying the Motion.

### B.  Plaintiff Failed to Meaningfully Meet and Confer

Where the Local Rules require a meet and confer before a motion can be filed, more is required than a perfunctory exchange before seeking judicial intervention in a discovery dispute.

Local Rule 26-6 requires a movant to make a good faith effort to meet and confer before filing a discovery motion. Local Rule IA 1-3(f) requires parties to communicate directly and discuss in good faith during such a meeting. The purpose of these requirements is to encourage parties to resolve disputes without court intervention and, at minimum, narrow the issues genuinely requiring judicial resolution. As courts in this District have repeatedly recognized, the meet and confer obligation requires parties to "personally and meaningfully discuss the discovery dispute" to resolve differences, not merely the exchange of demands and objections. *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 172 (D. Nev. 1996). The requirement is intended to promote a "frank exchange" between counsel and avoid unnecessary motion practice. *Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118, 120 (D. Nev. 1993). A party does not satisfy that obligation by entering discussions with a predetermined intention of filing a motion regardless of the responses received. *See ShuffleMaster,*

KAEMPFER

CROWELL

*Inc.*, 170 F.R.D. at 172 (meet and confer "must be more than just a 'formalistic prerequisite' to judicial resolution").

Here, Plaintiff attempted to avoid meeting altogether, instead insisting that his email demanding compliance would "serve[] as [Plaintiff's] good-faith effort to confer before moving to compel." Swazer Decl. at ¶ 3. When the parties did confer telephonically at X Corp.'s request, it explained its concerns regarding the First Amendment implications of unmasking an anonymous speaker and advised Plaintiff that disclosure would require a sufficient evidentiary showing. *Id.* at ¶¶ 4-8. Despite those discussions, Plaintiff never identified evidence demonstrating that the X Account itself engaged in actionable conduct, never addressed the constitutional concerns raised by X, and never proposed any compromise or narrowing of the issues in dispute. Instead, in refusing to address X Corp.'s concern for fear it would bolster any opposition, Plaintiff hid the proverbial ball, seemingly intent on necessitating motion practice. *Id.*

The Motion reflects the very deficiency the meet and confer was intended to address. Rather than responding to the substance of X Corp.'s concerns, Plaintiff largely assumes that disclosure should follow from the allegations in the Complaint—allegations that still fail to tease out the actions of the X Account separate and apart from similarly named accounts on other platforms. Such conduct falls short of the good-faith conferral process contemplated by the Local Rules and provides an independent basis to deny the Motion. *See Bliss v. CoreCivic, Inc.*, No. 2:18-CV-01280-JAD-EJY, 2022 WL 2498997, at *1 (D. Nev. June 2, 2022) (finding that a sufficient conferral requires parties to "present to each other the merits of their respective positions with the same candor, specificity, and support during the informal negotiations as during the briefing of discovery motions" and denying motion to compel for failing to do so).

This is yet another independent reason that the Motion should be denied. Plaintiff simply demanded that X Corp. abandon its well-founded objections and produce user data identifying an anonymous speaker, all because Plaintiff had brought a motion seeking early discovery—albeit a deficient one that never addressed the First Amendment safeguards around anonymous speech. That is not a good faith conferral, and the Motion should fail on this basis alone.

KAEMPFER
CROWELL

## C.    First Amendment Standard for Unmasking an Anonymous User

The development of the internet and connected devices and services over the past several decades, and in particular the advent and proliferation of social media platforms, has not changed the core First Amendment rights enjoyed by adults and minors alike. *Brown v. Entm't Merch. Ass'n,* 564 U.S. 786, 790 (2011) ("'[T]he basic principles of freedom of speech . . . do not vary' with a new and different communication medium."). It has long been recognized by the United States Supreme Court, including before the advent of the internet, that "[a] fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more." *Packingham*, 582 U.S. at 104.

With the advancement of technologies, places to engage in protected First Amendment activities have been recognized to include far more than the analog realm where "a street or a park is a quintessential forum for the exercise of First Amendment rights." *Packingham*, 582 U.S. at 104. Places where individuals can exercise their First Amendment rights have been recognized as encompassing "cyberspace—the 'vast democratic forums of the internet' in general, *Reno*, 521 U.S. 868, and social media in particular." *Packingham*, 582 U.S. at 104. Social media platforms have billions of users, offer a "relatively unlimited, low-cost capacity for communication of all kinds," *Id.* at 98 (citing *Reno*, 521 U.S. at 870), and "users employ these websites to engage in a wide array of protected First Amendment activity on topics 'as diverse as human thought.'" *Id*. at 105 (citing *Reno*, 521 U.S. at 870).

In *Reno*, the Court noted that "[t]hese websites can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard. They allow a person with an Internet connection to 'become a town crier with a voice that resonates farther than it could from any soapbox.'" *Packingham*, 582 U.S. at 107 (quoting *Reno*, 521 U.S. at 870).

The Court has further recognized that the First Amendment protects not only anonymous speech, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995); *Talley v. California*, 362 U.S. 60, 64–65 (1960), and the right to anonymously receive information, *Lamont v. Postmaster General*, 381 U.S. 301, 305 (1965), but also the right to speak anonymously on the internet, including on social media platforms. *Buckley*, 525 U.S. at 200 (1999); *Reno*, 521 U.S. at 870 (finding there is "no basis

KAEMPFER

CROWELL

Page 8 of 15

for qualifying the level of First Amendment scrutiny that should be applied" to online speech); *Brown,* 564 U.S. at 790; *ACLU v. Gonzales*, 478 F. Supp. 2d 775, 806 (E.D. Pa. 2007) (finding lack of anonymity will chill users' ability to engage with "sensitive, personal, controversial, or stigmatized content"); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 236 (4th Cir. 2004) (finding without anonymity, "the stigma associated with the content of [certain] sites may deter adults from visiting them"); *see also NetChoice v. Carr*, 2025 WL 1768621, at *15 (N.D. Ga. June 26, 2025) (recognizing well-established First Amendment right to speak anonymously on social media platforms).

This does not mean that an anonymous speaker's statements are immune from liability. But it does mean that, to unmask the anonymous user in the first instance—and to do so in a manner that does not risk chilling speech—First Amendment safeguards must first be satisfied before the speaker can be unmasked. *See*, *e.g.*, *In re Anonymous Online Speakers*, 661 F.3d at 1175-76 (collecting cases nationwide); *see also Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (determining whether procedural safeguards for protected speech were satisfied before ordering the unmasking of an anonymous speaker).

Courts in this circuit have thus held that before a service provider[1] such as X Corp. can be compelled to produce information that could unmask the identity of an anonymous speaker, the plaintiff must *first* make a "concrete" prima facie showing of his asserted cause of action. *See Arista Recs., LLC*, 604 F.3d at 118 (holding that a movant must make a "concrete showing of a prima facie claim of actionable harm" before a service provider may be compelled to unmask an anonymous speaker); *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 970 (N.D. Cal. 2005); *Doe v. 2TheMart.com Inc.*, 140 F.Supp.2d 1088, 1093 (W.D. Wash. 2001). This showing is necessary whether the speaker at issue is a non-party or an unknown defendant. *Jones v. Meta Platforms, Inc.*, No. 25-MC-80165-TSH, 2025 WL 2308494, at *5 (N.D. Cal. Aug. 11, 2025) (analyzing whether plaintiff made a prima facie showing of wrongful conduct by doe defendants).

[1] Although Nevada courts have not expressly addressed this issue with respect to service providers acting on behalf of users, courts in other jurisdictions have recognized that service providers may assert the constitutional and privacy rights of account holders in analogous contexts. *See, e.g.*, *In re Grand Jury Subpoena*, 875 F.3d 1179, 1183 (9th Cir. 2017); *Yelp Inc. v. Super. Ct.*, 17 Cal. App. 5th 1, 13 (2017); *Computer & Commc'ns Indus. Ass'n v. Paxton*, 747 F. Supp. 3d 1011, 1031 (W.D. Tex. 2024).

KAEMPFER

CROWELL

And once that showing is made, a court must still then balance the need for discovering the identifying information with the First Amendment interest of remaining anonymous. *See Dendrite Int'l, Inc.*, 775 A.2d at 760–61 ("[A]ssuming the court concludes that the plaintiff has presented a prima facie cause of action, the court must balance the defendant's First Amendment right of anonymous free speech against the strength of the prima facie case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed."); *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 982 (N.D. Cal. 2015) (holding that although plaintiffs presented a "real evidentiary" basis for their claim as to the anonymous account holder, the "First Amendment rights outweigh[ed] [their] need for the requested information").

Though Nevada has not adopted a single formal test, courts in this district, throughout the Ninth Circuit, and across the country have consistently applied these same principles when evaluating requests to unmask anonymous online speakers. *See, e.g.*, *In re Anonymous Online Speakers*, 661 F.3d at 1175-76 (collecting cases nationwide); *Quixtar, Inc. v. Signature Mgmt. Team, LLC*, No. 3:07-CV-505-ECR-RAM, 2009 WL 10690927, at *5 (D. Nev. Apr. 8, 2009) ("courts 'must adopt procedures that strike a balance between the plaintiff's need to destroy [an anonymous speaker's] anonymity and the anonymous speaker's First Amendment rights.'"). Even one Nevada state court in a case involving X Corp. has likewise recognized that these standards apply where a litigant is attempting to unmask an anonymous speaker. *In re Subpoena to X Corp.*, No. 260P00002-1B, slip op. at 3–4 (Nev. Dist. Ct. Carson City July 1, 2026); Swazer Decl. at ¶ 11.

There is no basis for deviating from these important constitutional standards here.

**D.** **The Motion Fails to Satisfy the First Amendment Standard for Unmasking the Anonymous User**

Assuming the court reaches the substance of the Motion despite the substantial procedural defects (it need not), the standards set forth above—as adopted by other federal courts, including those within the Ninth Circuit—are appropriately applied here to ensure that important First Amendment rights are not trammeled. The central problem with the Motion is straightforward: Plaintiff seeks to unmask the holder of the X Account @issathecooker, without producing *any evidence* that the X Account itself engaged in actionable conduct, i.e., making a prima facie showing of whatever claim

Plaintiff believes he has against that account holder. Instead, Plaintiff repeatedly points to alleged misconduct—on other platforms—by a person he identifies as "Issa" and asks the Court to infer that the anonymous speaker behind the X Account must be that same individual due to the similar account names.

The Motion points to several allegedly wrongful acts, including minting the unauthorized Bangchain token, communicating the alleged quid-pro-quo token-lockup condition, and "transmit[ing] three separate X posts coordinating the…token scheme." Mot. at 9-10. But the Motion does not establish that those acts were committed through the X Account. To the contrary, many of the alleged communications at the heart of Plaintiff's theory purportedly occurred through Telegram communications, not communications by the X Account. FAC ¶ 5k.

One of Plaintiff's principal examples illustrates the problem. The Motion asserts that "@issathecooker" personally transmitted the alleged token-lockup condition to Plaintiff's brother. Mot. at 9. But the Complaint makes clear that this communication allegedly occurred through Telegram, *not through the X Account*. FAC ¶ 10. The Motion assumes—without evidence—that the anonymous X Account user and the Telegram user are the same person. The Motion refuses to acknowledge that it is making an assumption and, worse yet, refuses to acknowledge the serious consequences that would flow from a real possible outcome—what if Plaintiff's unsupported assumption is just wrong, and the X Account holder has nothing to do with Plaintiff's claims?

That same gap became apparent during the parties' meet and confer. When asked to identify actionable conduct by the X Account itself, Plaintiff was unable to do so. Swazer Decl. ¶ 6-8. Instead, Plaintiff generally maintained that the X Account was important to the broader alleged scheme. *Id.* When pressed to explain how the X Account was connected to the allegedly actionable Telegram communications, Plaintiff responded that the X Account cross-linked to a different Telegram account, @issasthoughts. *Id.* When asked, Plaintiff never explained how a link to one Telegram account (@issasthoughts) established that the X Account was operated by the same individual who allegedly used another Telegram account (@issathecooker) to engage in the purportedly actionable conduct described in the Motion. *Id.* And when X Corp. explained its concerns about the assumptions that Plaintiff was making, Plaintiff cut off the meet and confer, stating that he thought X Corp. was merely

attempting to gather information to oppose his Motion. *Id.* X Corp. explained that was not true, and explained why the information was relevant. *Id.* But Plaintiff would not budge for reasons that are now apparent—he has no information connecting the X Account to his claims, and he is barreling ahead with a fishing expedition that presents serious First Amendment concerns.

Indeed, even in the Motion, Plaintiff emphasizes that the X Account links to @issasthoughts, but never explains how that fact bridges the critical evidentiary gap. The Motion proceeds through a chain of unsupported assumptions: that the X Account belongs to the same person behind the Telegram account, @issasthoughts, that @issasthoughts is connected to the Telegram communications described in the Complaint, and that the person behind those communications is responsible for the alleged misconduct.[2] Assumptions and inferences are not evidence. They are certainly not the prima facie evidentiary showing required before a court orders disclosure of an anonymous speaker's identity. Put differently, Plaintiff seeks to identify an anonymous speaker not because he has shown that the X Account engaged in actionable conduct, but because he hopes disclosure will confirm his belief that the account belongs to someone who did.

Plaintiff also fails to identify actionable conduct by the X Account itself. The Motion references three X posts, including one encouraging users not to sell tokens. Mot. at 10. Yet Plaintiff never explains what claim those posts supposedly satisfy, what elements of that claim are met, or how those posts independently establish a viable cause of action against the anonymous speaker. The Motion simply asserts that the posts were part of the broader scheme and asks the Court to work backwards from there.

That is not enough. The First Amendment requires a showing that the anonymous speaker sought to be unmasked engaged in actionable conduct. Plaintiff has instead shown only that he believes the X Account may be associated with someone who engaged in misconduct elsewhere based on similar account names. That distinction is critical because the consequence of disclosure is irreversible.

---

[2] The Motion does not clearly explain the relationship between the two Telegram accounts or how conduct attributed to @issathecooker on Telegram should be attributed to the X account. As pleaded, the chain appears to be: @issathecooker (X Account) → links to @issasthoughts (Telegram account) → unspecified connection → @issathecooker (Telegram account), where the critical connection between the two Telegram accounts is left largely unexplained.

KAEMPFER

CROWELL

If Plaintiff is wrong, the anonymous speaker's identity will be revealed based solely on speculation and association. Once anonymity is lost, it cannot be restored.

Even where a plaintiff can identify a potentially actionable claim, courts must still balance the plaintiff's need for discovery against the anonymous speaker's First Amendment interests before ordering disclosure. Here, X Corp. cannot determine from the Motion that the balance weighs in favor of unmasking the speaker associated with the X Account.

As discussed above, Plaintiff's allegations focus primarily on conduct allegedly occurring through Telegram accounts. By contrast, Plaintiff identifies only a handful of posts made directly by the X Account and does not clearly explain how those posts constitute actionable conduct. Nor does Plaintiff adequately explain how disclosure of the X Account holder's identity would materially advance his claims. Indeed, the Motion largely assumes that the individual behind the X Account is the same individual responsible for the Telegram activity described in the Complaint, but it offers little evidence establishing that connection.

This gap is particularly significant in the balancing analysis. The stronger the connection between the anonymous account and the alleged wrongdoing, the stronger the justification for compelling disclosure. Here, however, Plaintiff seeks information capable of identifying an anonymous speaker despite substantial uncertainty regarding whether the X Account is connected to the conduct that forms the basis of his claims. Put differently, the Motion does not explain why identifying the operator of the X Account will establish any element of Plaintiff's claims, reveal information unavailable through other means, or otherwise materially advance the litigation.

Because Plaintiff has failed to connect the X Account itself to actionable conduct, he has not made the prima facie showing, nor the balancing of interests, necessary to overcome the First Amendment protections afforded to anonymous speakers. The Motion should therefore be denied.

KAEMPFER

CROWELL

## IV.      CONCLUSION

X Corp. respectfully requests that the Court deny the Motion because Plaintiff (1) failed to properly serve the Motion, (2) failed to meaningfully meet and confer as required by the Local Rules, and (3) failed to satisfy the First Amendment safeguards required before an anonymous speaker may be unmasked.

DATED: July 21, 2026.

**KAEMPFER CROWELL**


By:   */s/ Sihomara L. Graves*
Sihomara L. Graves, No. 13239
Brett W. Pilling, No. 15981
50 W. Liberty Street, Suite 1100
Reno, Nevada 89501

MCDERMOTT WILL & SCHULTE LLP
J. Jonathan Hawk (*pro hac vice forthcoming*)
Arianna Swazer (*pro hac vice forthcoming*)
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206

Attorneys for Non-Party X CORP.

KAEMPFER
CROWELL

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I certify that service of the **NON-PARTY X CORP.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA** was made on today's date by submitting electronically for filing and service with the United States District Court for the District of Nevada through the PACER Electronic Filing System to the addressee(s) shown below:

Anthony Mitchell
618 Painted Opus Pl
North Las Vegas, NV 89084:
realanthonymitchell@gmail.com
*Pro Se Plaintiff*

Thomas Maniotis
Equity Legal, PLLC
5201 Blue Lagoon Drive, Ste. Floor 8
Miami, FL 33126
tamaniotis@equitylegal.net
*Attorneys for Nicholas Thomas & Topg.com Operator*

Keren E Gesund
Gesund & Pailet, LLC
7464 West Sahara Ave.
Las Vegas, NV 89117
*Attorneys for Nicholas Thomas*

Shlomo S. Sherman
Sherman Law, PLLC
2620 Regatta Drive
Suite 102
Las Vegas, NV 89128
shlomo@shermanlawlv.com
*Attorneys for Thrifty Consulting LLC, Andrew Joslin, Thrift Technologies LLC*

DATED: July 21, 2026.

/s/ Angelica Posadas
An employee of Kaempfer Crowell

KAEMPFER
CROWELL