**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Anthony Mitchell,<br><br>Plaintiff<br>v.<br><br>Tate et al.,<br><br>Defendants | Case No.: 2:26-cv-00720-JAD-BNW<br><br>**Order Granting Motions to Dismiss, Denying as Moot Motion for Temporary Restraining Order and Motion to Expedite Consideration of TRO Motion, and Overruling Non-Party Nicholas Thomas's Objection to Magistrate Judge's Order**<br><br>[ECF Nos. 101, 109, 118, 127, 134, 147, 148, 149, 178, 179, 190, 191, 192, 193] |

Plaintiff Anthony Mitchell entered Andrew and Tristan Tate's contest to develop a new artificial-intelligence startup. This "Hackathon" promised multiple rounds of adjudication and more than $1 million in prizes. Mitchell and his brother developed the Orifice AI project and its Hackathon entry, the Bangchain coin. Even though Mitchell's project appeared first on the Hackathon showcase leaderboard, no judges adjudicated his work, and he never received any prize money. Instead, he lost 200 hours of labor, out-of-pocket development costs, expected profits, and the commercial identity of Bangchain. He also subscribed to multiple Tate-related education platforms, losing money on those subscriptions too. So he sues the Tate brothers and various entities and individuals operating the platforms used to promote their schemes. Thirteen of the nineteen defendants he sues now move to dismiss for lack of personal jurisdiction and failure to state a claim. The remaining five defendants have yet to be served, and the clerk of court entered a default against the other.

Now on his second amended complaint, Mitchell fails to establish personal jurisdiction over any of these thirteen moving defendants. While he alleges that he fell victim to their

scheme in Nevada, he doesn't identify how the defendants purposefully directed their conduct to Nevada or its residents. And because this court doesn't have specific jurisdiction over any of the moving defendants, it also lacks jurisdiction under the Racketeer Influenced and Corrupt Organizations Act's (RICO) nationwide-service provision and over Mitchell's state-law claims. So I find that none of Mitchell's claims survive against the corporations,[1] limited-liability companies,[2] and individuals[3] who move to dismiss.

## Background[4]

Mitchell is a Nevadan artificial-intelligence and robotics developer who entered a Hackathon contest advertised by the Tate brothers.[5] This competition gave entrants 15 days to develop an artificial-intelligence project and enter it to win a "prize pool exceeding $1,000,000, and up to $1,000,000 in venture funding."[6] Mitchell and his brother developed the Orifice AI project and its Hackathon entry, the Bangchain project.[7] But nothing positive came from their participation in the Hackathon—Mitchell alleges that he lost "approximately 200 hours of skilled labor and out-of-pocket costs," subscription fees from the Tate brothers' fraudulent courses, and

---

[1] Legendary Courses Inc., University.com TRW Inc., War Room Inc., Inspire Commerce, Inc., Matador Learning Inc., and New Era Comics Inc.

[2] Thrifty Consulting LLC, Thrift Technologies LLC, Empire Legal Group LLC, and Courses Works LLC.

[3] Andrew Joslin, Valton Eason, and Mark Noyes Fischer

[4] The facts recited in this section are taken from Mitchell's renewed second amended complaint (ECF No. 105) and are not intended as findings of fact.

[5] ECF No. 105 at ¶ 2.

[6] *Id.* at ¶¶ 42, 44.

[7] *Id.* at ¶ 43.

the rights to "his submitted project, his personal data, and the value of his appropriated project identity" because the Bangchain name was used by someone else without his permission.[8]

To redress these losses, Mitchell sues the Tate brothers, several website platforms, content distributors, infrastructure companies, and associated entities and individuals.[9] He claims that the Tates operated an association-in-fact enterprise in which the individuals and entities he sues conspired to defraud individuals who subscribed to recurring subscriptions (called "The Real World" and "Hustlers University") by collecting proceeds, data, and intellectual property without providing any benefits in return.[10] For Mitchell, their fraud culminated with the Hackathon, which enticed individuals to enter their projects and promote the Tates' content with promise of prizes and venture-capital funding.[11] He alleges that the defendants supported the fraudulent enterprise in many ways, including by marketing the online subscriptions on various web domains, operating a support channel, advertising the Hackathon, offering rewards to subscribers for circulating promotional content, and collecting fees from subscriptions.[12] Mitchell states that "each defendant is subject to this court's personal jurisdiction and no other single district has personal jurisdiction over all defendants,"[13] and he sues nineteen defendants under the federal civil RICO statute (18 U.S.C. § 1962(c)),[14] RICO conspiracy (18 U.S.C. § 1962(d)),[15] Nevada's civil RICO statute (Nevada Revised Statute (NRS)

---

[8] *See id.* at ¶¶ 2, 64, 67, 70.

[9] *See id.*

[10] *Id.* at ¶¶ 46–59.

[11] *See id.* at ¶¶ 2, 7, 42.

[12] *See id.* at ¶¶ 1–7.

[13] *Id.* at ¶ 11 (cleaned up).

[14] *Id.* at ¶¶ 60–64.

[15] *Id.* at ¶¶ 85–87.

207.400),[16] the Nevada Deceptive Trade Practices Act (NRS 598.0903),[17] and various state-common-law theories.[18] Five of the defendants have yet to be served[19]—Emory Andrew Tate III, Tristan Tate, Nicholas Thomas, Parsa Abbasie, and Defied Trust Digital Trading - FZCO LLC—and the clerk entered a default as to another, Caputra Brands Group Inc.[20]

The remaining thirteen defendants move to dismiss Mitchell's claims for lack of personal jurisdiction under Federal Rule of Civil Procedure (FRCP) 12(b)(2) and for failure to state a claim under FRCP 12(b)(6).[21] They sort into three categories of entities and individuals: corporations and limited-liability companies that developed the payment platforms for Tate-related subscriptions; corporations and limited-liability companies that built, managed, and distributed Tate-related content, including subscription memberships; and the individuals who managed these entities:

- **Thrifty Consulting LLC:** Created the payment infrastructure that collected per-transaction fees from subscribers;[22]
- **Thrift Technologies LLC:** Operated a Tate-related domain that collected revenue from website traffic;[23]

---

[16] *Id.* at ¶¶ 79–82.

[17] *Id.* at ¶¶ 73–76.

[18] Breach of contract, promissory estoppel, unjust enrichment, fraudulent misrepresentation, civil conspiracy, and conversion. *Id.* at ¶¶ 65–72, 77–78, 83–84. Mitchell does not sue every defendant for every one of his claims.

[19] ECF No. 209 (Mitchell's second request for extension of time to serve these five defendants).

[20] ECF No. 210 (entry of default as to Caputra Brands Group Inc.).

[21] *See* ECF Nos. 127, 134, 147, 148, 149, 178, 179, 190, 191, 192 & 193.

[22] ECF No. 105 at ¶ 15.

[23] *Id.* at ¶ 16.

- **Andrew Joslin:** Managed the Thrifty and Thrift LLCs;[24]
- **Inspire Commerce, Inc.**: Developed and operated the Value.io gateway code that collects payments from subscribers;[25]
- **Mark Noyer Fischer:** Directed the design of the Value.io code;[26]
- **Legendary Courses Inc.:** Distributed subscription platforms on two web domains: jointherealworld.com and university.com;[27]
- **University.com TRW Inc.:** Managed Join the Real World and received subscription proceeds;[28]
- **War Room Inc.**: Managed the War Room membership on two web domains: thewarroom.ag and reachtwr.com;[29]
- **New Era Comics Inc.**: Received proceeds from selling "merchandise or subscriptions;"[30]
- **Courses Works LLC:** Coordinated distribution of course content and social-media content;[31]

---

[24] *Id.* at ¶ 17.

[25] *Id.* at ¶ 27.

[26] *Id.* at ¶ 28.

[27] *Id.* at ¶ 19.

[28] *Id.* at ¶ 23.

[29] *Id.* at ¶ 24.

[30] *Id.* at ¶¶ 31–32. Mitchell also identified New Era Learning LLC as an entity listed in jointherealworld.com's and university.com's privacy policies but alleges that he doesn't know whether New Era Learning LLC and New Era Comics Inc. are the same entity. *Id.* at ¶ 31. So he sues New Era Learning LLC as Roe Corporation 1. *Id.* at ¶ 32. New Era Comics Inc. filed the motion to dismiss. *See* ECF No. 193.

[31] ECF No. 105 at ¶ 29.

- **Empire Legal Group LLC:** Provided corporate guidance for three web domains: jointherealworld.com, university.com, and fundraiser.com;[32]
- **Valton Easton:** "[O]fficer, director, or manager" of Legendary Courses, Inc., University.com TRW Inc., War Room Inc., New Era Comics Inc., Courses Works LLC, and Empire Legal Group LLC;[33]
- **Matador Learning Inc.**: Built and maintained course content sold on subscription platforms.[34]

Each defendant's argument for why Mitchell fails to establish personal jurisdiction shares a common theme: even though they operated a platform, interface, or entity that reaches online users everywhere, Mitchell does not allege that they intentionally targeted Nevada and its citizens.

## Discussion[35]

### I. Mitchell's claims against all thirteen moving defendants fail for want of personal jurisdiction.

The Fourteenth Amendment limits a court's power to bind a nonresident defendant to a judgment in the state in which it sits.[36] So a federal district court can only exercise jurisdiction over a nonresident defendant with sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

---

[32] *Id.* at ¶ 26.

[33] *Id.* at ¶ 25.

[34] *Id.* at ¶ 30.

[35] While I have closely reviewed and considered all arguments presented, I do not address each and every one of the parties' contentions in this order unless they bear on my conclusions.

[36] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

justice.'"[37] To determine its jurisdictional reach, a federal court must apply the law of the state in which it sits.[38] Because Nevada's long-arm statute reaches the constitutional limit,[39] the salient question is whether jurisdiction "comports with the limits imposed by federal due process."[40] FRCP 12(b)(2) allows a court to dismiss a complaint for lack of personal jurisdiction.[41]

The law recognizes two categories of personal jurisdiction: general jurisdiction and specific jurisdiction.[42] Because Mitchell concedes that none of the moving defendants are subject to general jurisdiction in Nevada,[43] I apply only a specific-jurisdiction analysis. Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."[44] For specific jurisdiction to attach, "[t]he plaintiff cannot be the only link between the defendant and the forum,"[45] and "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum [s]tate" either.[46]

---

[37] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[38] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

[39] *Walden*, 571 U.S. at 283; Nev. Rev. Stat. § 14.065.

[40] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

[41] Fed. R. Civ. P. 12(b)(2).

[42] *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

[43] ECF No. 105 at ¶¶ 13–37 (alleging that none of the defendants is "at home" in Nevada). Mitchell admits that, for all moving defendants, his personal-jurisdiction theory relies on specific jurisdiction or RICO's nationwide-service provision. *See* ECF No. 138 at 7; ECF No. 139 at 6; ECF No. 159 at 12; ECF No. 160 at 4; ECF No. 161 at 5; ECF No. 180 at 6; ECF No. 195 at 6; ECF No. 196 at 5; ECF No. 198 at 5; ECF No. 200 at 8; ECF No. 201 at 10.

[44] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).

[45] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

[46] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The Ninth Circuit applies a three-prong test to determine whether the court may exercise specific jurisdiction over an out-of-state defendant: (1) the defendant "must have performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business" in the forum state; (2) the plaintiff's claims "must arise out of or result from [those] forum-related activities; and (3) the exercise of jurisdiction must be reasonable."[47] The plaintiff bears the burden of satisfying the first two prongs.[48] The defendant bears the burden on the third.[49] In deciding whether a plaintiff has met his burden, the court must accept as true the uncontroverted allegations in its complaint, but a plaintiff cannot rely on "bare allegations" alone.[50] The court also may review affidavits or declarations submitted by either side,[51] but "conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor."[52]

**A. Mitchell doesn't show that any of the defendants purposefully directed their actions at Nevada, so he fails to satisfy the first specific-jurisdiction prong.**

A plaintiff can show that the defendants satisfy the first specific-jurisdiction prong through "purposeful availment" or "purposeful direction."[53] The Ninth Circuit uses the purposeful-availment analysis for contract or unintentional-tort claims and the purposeful-

---

[47] *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

[48] *Schwarzenegger*, 374 F.3d at 802.

[49] *Id.*

[50] *Id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

[51] *Id.*

[52] *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (cleaned up).

[53] *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023).

direction analysis for "intentional tortious or 'tort-like'act[s]."[54] Mitchell's civil-RICO, RICO-conspiracy, consumer-fraud, and common-law claims are tortious, so the *Calder v. Jones*[55] purposeful-direction "effects test" applies.[56] The effects test requires that "the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state."[57] The defendant doesn't need to be in the forum state to satisfy any of the prongs of this test.[58] The moving defendants focus on the second prong, arguing that none of their conduct was aimed at Nevada.

***1. Intentional act***

Under the *Calder* effects test, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results."[59] Mitchell alleges that the defendants committed several intentional acts, such as soliciting subscribers and payments, accepting Hackathon submissions, providing coding for subscription-checkout webpages, and charging credit cards, and defendants do not contest

---

[54] *Id.* at 1091.

[55] *See Bolos v. Waldorf Astoria Mgmt. LLC*, 2024 WL 3594741, at *4 (D. Haw. July 31, 2024) (citing *Calder v. Jones*, 465 U.S. 783 (1984)).

[56] *See id.* at *4 (explaining that "it appears well-settled that RICO and RICO conspiracy claims based on fraud sound in tort" and collecting cases); *see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1027 (N.D. Cal. 2018).

[57] *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (en banc).

[58] *Id.* at 751–52.

[59] *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012).

that the conduct alleged here constitutes an intentional act.[60] So Mitchell has satisfied the first prong of the purposeful-direction test.

### 2. *Expressly aimed at Nevada*

#### a. *The Ninth Circuit requires more than passively operating a website.*

Not all internet content is expressly aimed at every state just because it's accessible nationwide.[61] The defendant must operate the website "in conjunction with 'something more,'" i.e., conduct targeting the forum state, for the court to have personal jurisdiction.[62] The Ninth Circuit has supplied several examples of a webpage defendant's conduct that qualifies as the "something more" required for a forum state to have jurisdiction.

In *Briskin v. Shopify, Inc.*,[63] the Ninth Circuit refined how global internet platforms can be subject to a court's specific jurisdiction. It rejected the categorical rule that a platform operating nationwide cannot be subject to specific jurisdiction in any forum.[64] But a plaintiff must still show that the platform "expressly aim[ed]" its wrongful conduct at the forum state.[65] Targeting the forum states means that the website's contacts "are its 'own choice and not random, isolated, or fortuitous.'"[66] Shopify expressly aimed its conduct at California because

---

[60] *See* ECF No. 105 at ¶¶ 38, 41; *Rounds v. Case-Mate Inc.*, 2025 WL 1873999, at *5 (C.D. Cal. July 2, 2025) ("The installation of software on the website [at issue] is a sufficient allegation of an intentional act under the Effects Test." (cleaned up)).

[61] *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011).

[62] *Id.* at 1229.

[63] *Shopify*, 135 F.4th at 739.

[64] *Id.* at 757.

[65] *Id.* at 758.

[66] *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 355, 365 (2021)) (cleaned up).

the plaintiff alleged that it targeted California consumers to extract and distribute their personal data.[67] Shopify's business model, the Ninth Circuit explained, was to "obtain valuable personal data about California consumers for its own commercial gain."[68] Shopify's California-consumer targeting was not mere "happenstance" because it "allegedly knew the location of consumers like [plaintiff] either prior to or shortly after installing its initial tracking software onto their devices."[69] So the Ninth Circuit found that the internet-commerce company was subject to specific jurisdiction in California.[70]

The *Shopify* court cited *Cybersell, Inc. v. Cybersell, Inc.* as a contrasting example of a Ninth Circuit case in which the plaintiff failed to show that the defendant's conduct was expressly aimed at the forum state.[71] The Arizona plaintiff sued a Florida-based website defendant for trademark infringement, unfair competition, fraud, and RICO violations.[72] The Ninth Circuit found that Arizona lacked personal jurisdiction over the Florida website because the site had no contacts in Arizona besides maintaining a publicly accessible website there.[73] And the defendant didn't specifically encourage Arizonans to access its site or seek business specifically in Arizona.[74]

District courts apply the *Shopify* reasoning to dismiss claims against companies that operate national websites but don't expressly aim their conduct at the forum state. For example,

---

[67] *Id.* at 755–56.

[68] *Id.* at 756.

[69] *Id.*

[70] *Id.* at 762.

[71] *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997).

[72] *Id.* at 416.

[73] *Id.* at 415, 420.

[74] *Id.* at 419.

in *Shah v. Hilton Worldwide Holdings, Inc.*, the plaintiff alleged that Hilton sold users' personal data and used it for marketing in violation of California's consumer-protection laws.[75] But Hilton's data-harvesting policy applied to all consumers and did not "pertain specifically to the use or sale of California users' data."[76] The plaintiff did not allege that Hilton knew the location of its consumers or their devices, that it compiled data on any particular California consumers, or that it had a policy of targeting Californians.[77] So the court dismissed the claims against Hilton for lack of personal jurisdiction because the plaintiff failed to meet the *Shopify* "expressly aims" requirement.[78]

***b. The parties dispute defendants' Nevada contacts.***

Mitchell claims that the moving defendants' scheme-related actions tie each of them to Nevada:

- Thrifty Consulting's payment infrastructure "charged Nevada residents,"
- Thrift Technologies operated the subscription platform that "reaches and bills Nevada residents,"
- Legendary Courses distributed the subscription platforms that were "sold to Nevada consumers,"

---

[75] *Shah v. Hilton Worldwide Holdings Inc.*, 2025 WL 1683577, at *2 (N.D. Cal. June 11, 2025).

[76] *Id.*

[77] *Id.*

[78] *Id.* at *3; *see also Barkley & Assocs., Inc. v. Brunshidle*, 2025 WL 2946906, at *4–*5 (C.D. Cal. Sept. 10, 2025) (finding that defendant didn't expressly aim its conduct at California by operating a public YouTube channel because plaintiff failed to show that its "channel has a specific focus on California or has a substantial California user base"); *but see Freeman v. 3Commas Techs. OU*, 2026 WL 579391, at *2 (9th Cir. Mar. 2, 2026) (unpublished) (reversing dismissal for want of personal jurisdiction, reasoning "we conclude that [defendant] 'knows about its California consumer base, conducts its regular business in California, contacts California residents, [and] interacts with them as an intermediary' for cryptocurrency trades" (quoting *Shopify*, 135 F.4th at 759)).

- University.com TRW and War Room received proceeds from the subscription sites that were "Nevada-directed,"
- Empire Legal Group supplied corporate support for the "Nevada-reaching consumer platforms,"
- Inspire Commerce operated the code that "was served to Nevada consumers and charged their Nevada payment cards,"
- Courses Works organized corporate functions that "operate[d] and sustain[ed] the scheme reaching Nevada,"
- Matador Learning sold subscription platforms that "reach[ed] Nevada,"
- New Era Comics sold merchandise or subscriptions "into Nevada," and
- Joslin, Eason, and Fischer led some of these entities whose platforms "reach" or were "served to" Nevada residents.[79]

Defendants aver that all of these activities are insufficient to meet the purposeful-direction test. The Thrifty defendants argue that they created a payment platform for New Era Learning LLC, but had no active business engagements or customers in Nevada, never marketed in Nevada, and had no physical presence in Nevada.[80] They concede that they processed a payment for Nevada customer Mitchell but contend that this incidental act falls short of showing that they "specifically appeal[ed]" to Nevada.[81]

[79] ECF No. 105 at ¶ 41.

[80] ECF No. 127 at 4.

[81] *Id.* at 8, 11.

Mitchell disagrees and responds that the court doesn't have to rely on Joslin's declaration if it contradicts his allegations.[82] But there's no contradiction. His responsive declaration misunderstands the purposeful-direction burden; he describes all of the actions that he, a Nevada resident, took to engage with Thrifty, but makes no argument that the Thrifty defendants knew that he, or any of its other payors, lived in Nevada.[83] Mitchell reasons that the Thrifty defendants' conduct was directed towards Nevada because "Thrifty's system charged a Nevada-billed card [and] kept a fee out of that charge."[84] The Thrifty defendants reply that Mitchell doesn't establish any meaningful Nevada–Thrifty contacts besides his own use of "New Era/The Real World's payment-processing systems" while in Nevada.[85]

The remaining motions to dismiss, oppositions, and replies proceed similarly. Legendary admits that it distributed the jointherealworld.com and university.com subscription platforms nationwide and that Mitchell's exhibit shows that Legendary was associated with allegedly "materially false representations," but it argues that these allegations aren't enough to establish specific jurisdiction.[86] University TRW and War Room argue that it's not enough that their subscription-related conduct reached Nevada.[87] And Empire Legal, Inspire, Courses Works, Matador, and New Era Comics echo the Thrifty defendants' contentions, pointing out that Mitchell fails to identify "a Nevada transaction, an Empire Legal communication to [him], a

---

[82] *See* ECF No. 138 at 9.

[83] *See* ECF No. 138-3.

[84] ECF No. 138 at 11 (cleaned up).

[85] ECF No. 152 at 2.

[86] ECF No. 134 at 8–9; *see* ECF No. 105-1 at 41 (associating Legendary with "[f]alse product-value rep[resentations]" on jointherealworld.com's checkout page).

[87] ECF Nos 179 at 4–5; ECF No. 191 at 5.

Nevada-directed decision, or a service allegedly performed in Nevada;"[88] he doesn't allege "that Inspire knew [he] was in Nevada when any code operated [or] identify a [Nevada] transaction that touched Value.io;"[89] he "identifies no agreement by Courses Works formed, performed, or directed to Nevada;"[90] he fails to "identify a Matador-controlled transaction, a Nevada-directed communication, a Matador role in the alleged agreement, or a connection between course-content maintenance and [his] asserted injuries;"[91] and he doesn't identify a "New Era Comics transaction with [him], or connect[] a particular New Era Comics act to the asserted Hackathon, project, token, or RICO injuries."[92]

Mitchell responds that he establishes jurisdiction because he associates all of these defendants with Nevada-reaching conduct.[93] He attaches screenshots of browser code from the websites' checkout pages and provides screenshots of his purchases, which name some of the defendants who collected his Nevada-based payment.[94] And he provides screengrabs of some of the defendants' websites and LinkedIn profiles showing the services that they provide, explaining that he engaged with these services in Nevada.[95]

---

[88] ECF No. 190 at 5 (emphasis added).

[89] ECF No. 149 at 6–7 (emphasis added).

[90] ECF No. 178 at 4 (emphasis added).

[91] ECF No. 192 at 5 (emphasis added).

[92] ECF No. 193 at 5 (emphasis added).

[93] *See, e.g.*, ECF No. 139 at 6; ECF No. 160 at 9 ("Plaintiff resides in Nevada, and the charges he made on that checkout were made on a payment card billed to his Nevada address" (citing ECF No. 160-1 at ¶ 9, decl. of Anthony Mitchell)); ECF No. 180 at 6; ECF No. 195 at 6; ECF No. 198 at 5–6; ECF No. 200 at 8; ECF No. 201 at 9–10.

[94] *See, e.g.*, ECF Nos. 160-6, 195-2, 198-6.

[95] *See, e.g.*, ECF Nos. 180-3, 200-6, 200-7.

The individual defendants (Joslin, Eason, and Fischer) all argue that they have no business connections with Nevada and that their ownership of the defendant entities doesn't connect them to Nevada for the same reasons that Mitchell fails to establish specific jurisdiction for their corporations and limited-liability companies.[96] Mitchell responds that the officers' own acts support jurisdiction because they caused their companies to engage in Nevada-reaching conduct.[97]

### *c. Mitchell alleges no Nevada-specific conduct.*

Mitchell alleges nothing more than the moving defendants' random and fortuitous contact with Nevada.[98] He doesn't claim that any of the defendants knew about their Nevada customer base, sought subscriptions specifically from Nevadans, conspired to gain revenue from Nevada subscribers, targeted Nevadans with advertisements, or explicitly marketed their courses and subscriptions in Nevada. Mitchell alleges only that he engaged with their websites in Nevada. His "schedule of predicate acts" confirms this: all of the materially false representations describe how defendants' conduct affected him.[99] But the table only references Nevada once, stating that War Room sold its membership within a "Nevada-directed conversion funnel," i.e., a Nevada-specific marketing scheme.[100] He doesn't specify how this scheme targeted Nevada, as he offers

---

[96] *See* ECF No. 127 at 7, 11; ECF No. 147 at 2, 6; ECF No. 148 at 6–7*; Davis v. Metro Prods., Inc.*, 885 F.2d 515, 524 (9th Cir. 1989) (finding personal jurisdiction over corporate officers in an Arizona district court reasonable because they "purposefully directed their actions toward Arizona").

[97] *See* ECF No. 138 at 14; ECF No. 159 at 7–8; ECF No. 161 at 5–6.

[98] *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (quoting *Burger King*, 471 U.S. at 475).

[99] *See* ECF No. 105-1.

[100] *See id.* at 4.

no mention of whether defendants knew the location of their customer base or had policies of obtaining Nevada customer's data.[101]

Conclusory statements that defendants targeted Nevada are not sufficient to establish specific jurisdiction. Mitchell claims that the defendants' scheme "reaches"[102] Nevada, but that is exactly the type of incidental internet contact that the Ninth Circuit rejects.[103] He alleges nationwide conduct, such as his claims that the payment defendants Thrifty, Thrift, and Joslin built the payment gateway, "collect[ed] subscription revenue in the United States," and deposited the funds offshore.[104] But he doesn't allege how these defendants expressly aimed their conduct at Nevada. While, unlike in *Cybersell*,[105] defendants' platforms were interactive because users could sign up for subscriptions and enter their payment information, publishing an interactive website accessible in Nevada does not alone establish specific jurisdiction. I find the discussion in *Shah* persuasive; an interactive website's actions pertaining to all users doesn't show that the platform expressly aimed its conduct at the forum state.[106]

Defendants operating websites, even if for nefarious purposes, are not automatically subject to a Nevada court's jurisdiction simply because a user can assess the site in Nevada. But

---

[101] *See Shopify*, 135 F.4th at 755–56.

[102] ECF No. 105 at ¶¶ 26, 29 (alleging that Empire Legal Group LLC's consultancy and Courses Works LLC's social-media and content coordination "sustain the scheme reaching Nevada").

[103] *See Cybersell, Inc.*, 130 F.3d at 419–20; *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156–58 (9th Cir. 2006).

[104] ECF No. 105 at ¶ 48.

[105] *Cybersell, Inc.*, 130 F.3d at 418 ("Unlike passive sites . . . users can exchange information with the host computer when the site is interactive. Courts that have addressed interactive sites have looked to the 'level of interactivity and commercial nature of the exchange of information that occurs on the website' to determine if sufficient contacts exist to warrant the exercise of jurisdiction." (cleaned up)).

[106] *See, Shah*, 2025 WL 1683577, at *2.

that's the most that Mitchell alleges. And because his jurisdiction allegations for the individual defendants rely on their entities' Nevada conduct, he doesn't establish this court's jurisdiction over Joslin, Eason, or Fischer either. So I find that because Mitchell fails to show that the moving defendants expressly aimed their conduct at Nevada, he doesn't satisfy the effects test and can't establish this court's specific jurisdiction over any of the moving defendants.

### B. The court lacks jurisdiction under RICO's nationwide-service provision because it doesn't have personal jurisdiction over any defendant.

Mitchell contends that the court can exercise jurisdiction based on RICO's nationwide-service provision because all defendants have minimum contacts with the United States through their predicate acts.[107] He alleges that "the ends of justice" require one court to hear all of his claims "because the association-in-fact enterprise spans multiple jurisdictions and no other district court could exercise jurisdiction over all of its members."[108] The moving defendants respond that Mitchell can't invoke RICO's nationwide-service provision because he fails to establish personal jurisdiction over a single defendant, and that, regardless, his nationwide-service allegations are conclusory, so the court can't exercise 18 U.S.C. § 1965(b) jurisdiction.[109] Mitchell maintains that at least three, if not all, defendants satisfy the specific-jurisdiction test, so RICO jurisdiction applies to the rest.[110]

---

[107] ECF No. 105 at ¶ 39 (citing 18 U.S.C. § 1965(b) & (d)).

[108] *Id.*

[109] *See* ECF No. 127 at 15; ECF No. 134 at 10; ECF No. 147 at 7–8; ECF No. 148 at 7; ECF No. 149 at 7–8; ECF No. 178 at 4; ECF No. 179 at 5; ECF No. 190 at 4; ECF No. 191 at 4; ECF No. 192 at 4; ECF No. 193 at 4.

[110] *See, e.g.*, ECF No. 138 at 18; ECF No. 180 at 7–8 (explaining that Mitchell relies primarily on Thrift, Thrifty, and Joslin to establish anchor jurisdiction because "Thrifty allegedly build and maintained the system that charged Nevada payment cards and received transaction fees").

18 U.S.C. § 1965(b) allows nationwide service for RICO defendants "residing outside the federal court's district when it is shown that 'the ends of justice' require it."[111] To invoke this provision, the Ninth Circuit requires "personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy," no other district in which a court would have personal jurisdiction over all of the alleged co-conspirators, and a plausible RICO allegation.[112] "Merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide-service provisions."[113]

Because Mitchell cannot show that any of the moving defendants personally directed its conduct at Nevada, he doesn't have an anchor defendant for RICO nationwide service. In his responses, Mitchell relies primarily on Thrift, Thrifty, and Joslin as the specific-jurisdiction defendants that support his nationwide-service claim.[114] He contends that their maintenance of the "system that charged Nevada payment cards and received transaction fees" established Nevada-focused conduct.[115] But as discussed, the allegation that these payment-processing defendants charged Mitchell's credit card, or even other Nevadans' credits cards, is not enough without showing that they specifically directed their actions at Nevada. And because this court lacks personal jurisdiction over Thrift, Thrifty, and Joslin, none of them can be the hook for RICO jurisdiction. The defendants that Mitchell has yet to serve also can't be RICO anchor defendants because, as the Ninth Circuit explained in *Benny v. Pipes*, "[a] federal court is

---

[111] *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986).

[112] *Id.* at 538–39; *see Wegner v. Wells Fargo Bank Nat'l Ass'n*, 2018 WL 3114528 (D. Nev. June 25, 2018), *aff'd sub nom.* 791 F. App'x 669 (9th Cir. 2020) (citing *Butcher's Union*, 788 F.2d 535 at 539).

[113] *Butcher's Union*, 788 F.2d 535 at 539.

[114] *See, e.g.*, ECF No. 180 at 7–8.

[115] *Id.*

without personal jurisdiction over a defendant unless the defendant has been served in accordance with" FRCP 4.[116] So Mitchell cannot establish 18 U.S.C. § 1965(b) jurisdiction over any of the moving defendants. And because the court doesn't have specific jurisdiction over any of the moving defendants and thus doesn't have § 1965(b) jurisdiction, it also lacks pendent jurisdiction for Mitchell's state-law claims.[117]

### C. The court denies Mitchell leave to amend because amendment would be futile.

Mitchell requests leave to amend if any of his claims are deficient.[118] FRCP 15(a)(2) directs courts to freely give parties leave to amend their pleadings "when justice so requires." "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint."[119]

Mitchell's leave-to-amend arguments focus mostly on his substantive claims, not on personal jurisdiction, and he requests broad leave to amend "if any portion of the pleading is found insufficient."[120] The defendants that address leave to amend reply that it would not cure

---

[116] *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *modified on other grounds*, 807 F.2d 1514 (9th Cir. 1987); *Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir. 1982) ("Defendants must be served in accordance with Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction.").

[117] *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.").

[118] *See, e.g.*, ECF No. 159 at 23–24.

[119] *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citation omitted).

[120] *See* ECF No. 159 at 23–24; ECF No. 160 at 24. Mitchell has filed three revisions of his complaint. *See* ECF Nos. 5, 34, 105. I denied his motion to file a proposed 231-page second

Mitchell's deficient pleading or the missing Nevada contact and ask the court to deny or strictly limit any amendment.[121]

I find that leave to amend would be futile because Mitchell cannot cure this court's lack of personal jurisdiction over any of the moving defendants.[122] So I dismiss all of Mitchell's claims against the moving defendants without leave to amend and without prejudice to Mitchell bringing his claims in a forum with personal jurisdiction over the defendants. And because this court lacks personal jurisdiction over Andrew Joslin and Thrift Technologies LLC, I also cannot adjudicate Mitchell's motion for a temporary restraining order against these two defendants[123] or his motion to expedite consideration of his temporary-restraining-order motion.[124] So I deny both motions as moot.

---

amended complaint and ordered him to file the operative complaint in 50 pages or less. *See* ECF Nos. 66-2, 96.

[121] *See, e.g.*, ECF No. 197 at 8; ECF No. 204 at 7–8.

[122] In many of his motion-to-dismiss responses, Mitchell also requests limited jurisdictional discovery to collect documents showing the type of platforms that the defendants operated, their association with other defendants, and their coordination to effectuate the alleged scheme. *See, e.g.*, ECF No. 198 at 15 (requesting jurisdictional discovery to see how many War Room membership came from Nevada users); ECF No. 200 at 19 (seeking discovery on Matador's corporate officers and its relationship to the Hackathon); ECF No. 201 at 21 (requesting jurisdictional discovery to show whether New Era Comics was associated with Nevada billing). Because I don't find that any of the information that Mitchells seeks in discovery would establish specific jurisdiction, I deny this request as well. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (holding that denying jurisdictional discovery is not an abuse of discretion if "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction" (quotations and citation omitted)).

[123] ECF No. 109.

[124] ECF No. 118.

## II. Non-party Nicholas Thomas's objection to the magistrate judge's denial of his motion to quash

Non-party Nicholas Thomas objects to the magistrate judge's order denying his motion to quash, modify, or for a protective order regarding Mitchell's third-party subpoenas.[125] Mitchell's subpoenas seek information from GoDaddy.com, LLC, and Domains By Proxy, LLC, regarding the domain fundraiser.com.[126] He issued these subpoenas, with the court's permission, to help him identify and serve Doe Defendant 1.[127] In his motion to quash, Thomas argued that the subpoenas seek information beyond that which the court authorized and that the subpoenas should be modified, or that the court should issue a protective order, because they seek confidential information.[128]

Magistrate Judge Weksler denied Thomas's motion because "[g]enerally, only the party subject to the subpoena has standing to bring a motion to quash" under FRCP 45(d)(3)(A).[129] Because Mitchell's subpoenas were directed to two other non-parties, not Thomas, and because he failed to show that he had "a personal right or privilege in the documents sought," Judge Weksler denied his motion.[130] She also denied his motion under FRCP 45(d)(3)(B) because,

---

[125] ECF No. 101; *see* ECF No. 21 (Mitchell's motion for leave to conduct limited third-party discovery); ECF No. 26 (order granting Mitchell's motion to conduct limited discovery and permitting him to "serve the Rule 45 subpoenas for the purpose of obtaining information that may identify Doe Defendant 1"); ECF No. 46 (Thomas's motion to quash, modify, or for a protective order regarding Mitchell's subpoenas to non-parties GoDaddy.com, LLC, and Domains By Proxy, LLC, for information on the domain fundraiser.com); ECF No. 91 (order denying ECF No. 46).

[126] ECF No. 46 at 4; ECF No. 21 at 4.

[127] *See* ECF No. 26.

[128] ECF No. 46 at 5–6; ECF No. 101 at 5–6.

[129] ECF No. 91 at 1.

[130] *Id.* at 1–2.

even though an individual not subject to the subpoena can move under this rule, Thomas didn't show that Mitchell's subpoenas required "disclosing a trade secret or other confidential research, development, or commercial information" or "an unretained expert's opinion."[131] And she concluded that FRCP 26(c) permits the court to issue protective orders only for parties or individuals targeted by the subpoenas.[132] Thomas separately moved to quash or modify Mitchell's GoDaddy and Domains By Proxy subpoenas regarding two different domains, and Judge Weksler denied that motion as well.[133]

Thomas objects to Judge Weksler's orders, contending that she failed to consider alternative relief like "modification, conditional production, notice, confidentiality, sealing/redaction, and use restriction."[134] He argues that this relief should be granted because the confidentiality and privacy risks are not speculative and permit the court to apply the exception to FRCP 45(d)(3)(A) standing or to grant relief under FRCP 45(d)(3)(B).[135] He also asks the court to vacate Judge Weksler's denial of his second motion to quash or modify because it "involved different subpoenas, different domains, . . . and a different request for protective conditions."[136] He contends that this court's order denying Mitchell's preliminary-injunction

---

[131] *Id.* at 2–3.

[132] *Id.* at 3.

[133] ECF No. 89 (Thomas's motion to quash, modify, or for a protective order regarding Mitchell's subpoenas to non-parties GoDaddy.com, LLC, and Domains By Proxy, LLC, for information on the domains university.com and thewarroom.ag); ECF No. 95 (order denying ECF No. 89 for the same reasons stated in ECF No. 91).

[134] ECF No. 101 at 5.

[135] *Id.* at 5–6.

[136] *Id.* at 6.

and temporary-restraining-order motions supports implementing protective conditions here because Mitchell's GoDaddy and Domains By Proxy subpoenas are similarly overbroad.[137]

**A. The magistrate judge didn't clearly err by exercising her discretion to deny Thomas's motion under FRCP 26(c), 45(d)(3)(A), and 45(d)(3)(B).**

A district judge may reconsider any non-dispositive matter that has been finally determined by a magistrate judge "when it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."[138] This standard of review "is significantly deferential" to a magistrate judge's determination.[139] A district court may overturn a magistrate judge's determination under this standard only if it has "a definite and firm conviction that a mistake [of fact] has been committed"[140] or a relevant statute, law, or rule has been omitted or misapplied.[141]

***1. FRCP 26(c) and 45(d)(3)(A)***

Thomas isn't a party targeted by Mitchell's subpoenas. And while some courts in this district have applied a personal-right or privilege exception to FRCP 45(d)(3)(A), Judge Weksler found that even if she considered that exception, Thomas wouldn't meet it because he only vaguely speculated about why his confidentiality would be affected by these subpoenas.[142] Judge Weksler's decision was not contrary to law and she had discretion to apply, or not apply, the personal-right exception recognized by some courts in this district. She did not misapply the

---

[137] *Id.* at 7; ECF No. 96 (denying Mitchell's motions for a temporary restraining order and preliminary injunction because this court couldn't exercise jurisdiction by enjoining the unknown, unserved defendants).

[138] L.R. IB 3-1(a).

[139] *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993).

[140] *Id.* (cleaned up).

[141] *See Grimes v. City and Cnty. of S.F.*, 951 F.2d 236, 240–41 (9th Cir. 1991).

[142] ECF No. 91 at 2.

law by declining to invoke this exception, and her determination that Thomas's privacy concerns were speculative was not clearly erroneous. Even in his objections to Judge Weksler's decision, Thomas fails to identify why modifying the subpoena to protect confidential information would be justified.[143] He also doesn't show why FRCP 26(c)'s protective-order provision should apply to him as an individual not targeted by the subpoena.

Thomas relies on *Twitch Interactive, Inc. v. Does 1 Through 100* to argue that the court should impose privacy safeguards, but in that case the protections were issued under FRCP 26(c), which allows a court to grant a protective order for "[a] party or any person from whom discovery is sought."[144] Mitchell does not object to Judge Weksler's finding that FRCP 26(c) does not apply to him, and he fails to identify any case law applying FRCP 45(d)(2)(A)'s personal-information exception (used in some courts in this district) to FRCP 26(c). So I find that the magistrate judge's ruling under FRCP 42(d)(3)(A) was not clearly erroneous or contrary to law, and I affirm it.

### 2. *FRCP 45(d)(3)(B)*

FRCP 45(d)(3)(B) allows an individual not directly targeted by a subpoena to seek to modify or quash it if it requires disclosure of a trade secret or confidential research, development, or commercial information.[145] Thomas argues that Mitchell's GoDaddy and

---

[143] ECF No. 101 at 5–6. Thomas argues that the subpoenas will lead to the disclosure of identity and account information. *Id.* While he doesn't need to admit any connection to the subpoenaed non-parties, he fails to even suggest how the information that Mitchell seeks could affect him in way that requires a protective order. *See Twitch Interactive, Inc. v. Does 1 Through 100*, 2019 WL 3718582, at *5 (N.D. Cal. Aug. 7, 2019) (sua sponte granting a protective order because plaintiff sought early discovery for his claims "involv[ing] allegations of inflammatory conduct").

[144] *Id.*

[145] FRCP 45(d)(3)(B) also permits a court to modify or quash a subpoena if it requires disclosure of an unretained expert's opinion, but that provision is not relevant here.

Domains By Proxy subpoenas could reveal "identity and account information."[146] Thomas doesn't explain how personal identifying account information involves trade secrets or other confidential research, development, or commercial business information; he states only that "the subpoenas seek records whose purpose is to identify persons and accounts associated with domain names."[147] This is not the confidential business information protected by FRCP 45(d)(3)(B).

Thomas also suggests that the court's order denying Mitchell's motions for a preliminary injunction and temporary restraining order (TRO) is informative here.[148] Mitchell requested a preliminary injunction and TRO requiring non-party domain-name providers to lock various domains associated with the alleged scheme.[149] But I denied his request under FRCP 65 because this court lacks jurisdiction over the non-parties that Mitchell sought to enjoin. That finding is not relevant here because Mitchell issued a Rule 45 subpoena to properly seek information from non-parties, he did not request injunctive relief from the court.[150] Judge Weksler thus did not err in concluding that Thomas failed to provide any detail that "would warrant this court's discretion to grant a motion to quash under Rule 45(d)(3)(B)."[151] So I overrule Thomas's objection and

---

[146] ECF No. 101 at 5.

[147] *See id.* at 5 (stating that FRCP 45(d)(3)(B) protects "a person 'subject to or affected by a subpoena'" without explaining why the information Thomas seeks to protects falls within the rule's protections).

[148] *See id.* at 7; ECF No. 96.

[149] ECF No. 96 at 1.

[150] *Id.* at 2–4.

[151] ECF No. 91 at 2–3 (cleaned up).

affirm the magistrate judge's order denying his motion to quash, modify, or for a protective order regarding Mitchell's subpoenas.[152]

## Conclusion

Because this court lacks personal jurisdiction over any of the moving defendants, IT IS ORDERED that defendants' motions to dismiss **[ECF Nos. 127, 134, 147, 148, 149, 178, 179, 190, 191, 192, 193] are GRANTED**. **Anthony Mitchell's claims against Thrifty Consulting LLC, Legendary Courses Inc., Andrew Joslin, Thrift Technologies LLC, University.com TRW Inc., War Room Inc., Valton Eason, Empire Legal Group LLC, Inspire Commerce, Inc., Mark Noyes Fischer, Courses Works LLC, Matador Learning Inc., and New Era Comics Inc. are DISMISSED** without prejudice for want of personal jurisdiction and without leave to amend because amendment would be futile. The Clerk of Court is directed to **TERMINATE** these defendants as parties in this case.

IT IS FURTHER ORDERED that Mitchell's motion for a temporary restraining order against Andrew Joslin and Thrift Technologies LLC **[ECF No. 109]** and his motion for expedited consideration of his temporary-restraining-order motion **[ECF No. 118]** are **DENIED as moot**.

[152] Thomas also objects to the magistrate judge's minute order denying his motion to quash Mitchell's subpoenas directed to the same non-parties seeking information about two other domains. I overrule this objection as well because the magistrate judge did not clearly err by relying on the same reasoning under FRCP 45(d)(2)(A) and FRCP 45(d)(2)(B) to deny Thomas's motion.

IT IS FURTHER ORDERED that non-party Nicholas Thomas's objection to the magistrate judge's order denying motions to quash and for protective orders **[ECF No. 101] is OVERRULED**. The magistrate judge's orders **[ECF Nos. 91 & 95] are AFFIRMED.**

U.S. District Judge Jennifer A. Dorsey
October 29, 2026